UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MARCUS KELLEY,

                Plaintiff,                    CIVIL ACTION NO. 07-13977

      v.                          DISTRICT JUDGE PAUL D. BORMAN

OAKLAND COUNTY JAIL,           MAGISTRATE JUDGE VIRGINIA M. MORGAN
OAKLAND COUNTY GRIEVANCE
COMMITTEE, HOLMES, VASQUEZ,
WOODLIFF, LEMAN, J. MCCOY,
MARIA LNU, GINNEL, PRASKI,
JOHN DOE #1, JOHN DOE #2,
OCHADLEUS, and UNKNOWN
LIEUTENANT,

                Defendants.
_____/

## REPORT AND RECOMMENDATION

## I.  Introduction

       This is a *pro se* 42 U.S.C § 1983 action in which the plaintiff, a former inmate in the

custody of the Michigan Department of Corrections (MDOC), alleges that the defendants

deprived him of his rights under the United States Constitution.  The matter comes before the

court on Oakland County Jail, Oakland County Grievance Committee, Holmes, Vasquez,

Woodliff, Leman, McCoy, Maria LNU, Ginnel, Praski, and Ochadleus' Motion to Dismiss

and/or for Summary Judgment (D/E #19).  For the reasons discussed below, this Court

recommends that defendants' motion be **GRANTED IN PART**.  The claims against defendants

Oakland County Jail and Oakland County Grievance Committee are improper because they are not entities that can be sued under § 1983 and, consequently, those two defendants should be dismissed from this action.

The claims alleging a denial of access to the courts against defendants Woodliff, Leman, Maria LNU and Praski should be dismissed because plaintiff failed to allege any injury. The denial of access to the courts claims against Woodliff, Maria LNU and Praksi are the sole claims against those defendants and, consequently, those three defendants should be dismissed from this action. Leman, however, also has a retaliation claim made against him and that claim should be allowed to proceed.

The retaliation claims against defendants Holmes, Vasquez, J. McCoy and Ochadleus should also be allowed to proceed. The retaliation claim against defendant Ginnel, however, fails to allege the element of causation and should be dismissed.

## II. Background

### A. Complaint

On September 20, 2007, plaintiff filed the complaint against defendants in this matter (D/E #1). In that complaint, plaintiff purports to make a claim "for money damages brought pursuant to 42 U.S.C. §§ 1983 and 1988 and the First, Fourth, Fifth, Sixth, Eighth, and under common law of the State of Michigan against defendants (sic)" (Complaint, p. 3). Specifically, plaintiff alleged that, after plaintiff was threatened by another inmate, an unknown deputy discriminated against plaintiff and moved him to an area and bunk that was only to be used by trustee workers. (Complaint, p. 4) Plaintiff also alleged that, on April 20, 2007, he was

unlawfully removed from a work release program for an unknown reason. (Complaint, p. 4) Plaintiff further alleged that, after he submitted a grievance on May 8, 2007, he was transferred to another facility out of retaliation. Later, plaintiff was returned to the Oakland County Jail and placed in 24 hour lockup. On May 20, 2007, plaintiff was transferred from 24 hour lockup D-1-A to 24 hour lockup D-5-B. (Complaint, p. 4)

Under the "Retaliation" heading of his complaint, plaintiff alleged that Holmes denied plaintiff's request to get married by simply stating "security reasons." (Complaint, p. 5, ¶ 1) Plaintiff also alleged that, on July 20, 2007, Vasquez pulled plaintiff out of his cell and threatened to raise plaintiff's security level. (Complaint, p. 6, ¶ 2) In addition to the threats, Vasquez allegedly stated "I know you are the problem and I will personally deal with you myself!" (Complaint, p. 6, ¶ 2) Plaintiff further alleged that, while he submitted a grievance regarding the denial of his access to the courts to Leman on August 5, 2007, the grievance has mysteriously disappeared. (Complaint, p. 6, ¶ 3) Plaintiff also alleged that, on August 24, 2007, a sick inmate in plaintiff's housing area kept pleading for medical attention by beating on the bars and Ochadleus told plaintiff "[i]f that fucker beats on the bars again, I'm pulling you out of there and I will wipe my feet on your sheets and spit on your bed!" (Complaint, p. 7, ¶ 6) When plaintiff asked Ochadleus why Ochadleus was punishing him, Ochadleus replied "I will fuck you up [plaintiff], I don't like you that's why!" (Complaint, p. 7, ¶ 6) Ochadleus also threatened to fabricate a ticket against plaintiff. (Complaint, p. 7, ¶ 6) Plaintiff asked for Ochadleus' name and badge number, but Ochadleus responded "[g]o on and write a grievance bitch! I know what happens to those grievances bitch! Welcome to jail bitch" (Complaint, p. 7, ¶ 6)

Under the heading "No Proper Grievance Procedure," plaintiff alleged that the Oakland County Jail failed to provide inmates with adequate grievance procedure methods. (Complaint, pp. 9-11) Specifically, plaintiff alleged that the red boxes he was told to drop his grievances in no longer exist, the grievances themselves were ineffective, and there was a danger of retaliation. (Complaint, pp. 9-11)

Under the heading, "Denied Access to the Courts," plaintiff alleged that defendants conspired to deny plaintiff eleven additional copies of a complaint that plaintiff needed to meet an August 30, 2007 deadline. (Complaint, p. 11, ¶ C1a) Plaintiff alleged that Praski first told plaintiff that the "Inmate Legal Resource Request" no longer makes legal copies (Complaint, pp. 11-12, ¶ C2b) and, later, that the request form plaintiff was attempting to use was outdated. (Complaint, p. 12, ¶ C2b) When plaintiff complained that his handbook provided that the form was adequate and that there should be red boxes to drop off grievances, Praski told him that the handbook was outdated as well. (Complaint, p. 12, ¶ C2b)

Plaintiff also noted that he had discussed defendants' denial of his access to the courts in a grievance dated August 9, 2007, which he incorporated into his complaint and attached as Exhibit D. (Complaint, p. 11, ¶ C1a) In that grievance, plaintiff alleged that, on August 2, 2007, plaintiff received a court order for eleven copies of his complaint against multiple deputies and the entire Oakland County Jail chain of command. (Oakland County Jail Inmate Grievance dated August 9, 2007, attached as Exhibit D to Plaintiff's Complaint, pp. 17-20) Realizing that there was no copy machine in the inmate law library, plaintiff asked Woodliff to copy his complaint, but Woodliff refused to do so. (Oakland County Jail Inmate Grievance, Complaint, p.

17)  Plaintiff also asked Leman to copy the complaint, but Leman refused to do so or to get a supervisor to meet with plaintiff.  (Oakland County Jail Inmate Grievance, Complaint, p. 17)  Plaintiff then submitted a kite regarding his inability to get copies of his complaint and he eventually spoke with a counselor, who agreed to give plaintiff's complaint to plaintiff's mother so plaintiff's mother could copy it.  (Oakland County Jail Inmate Grievance, Complaint, pp. 17-18)

That August 9, 2007 grievance also provided that, on August 8, 2007, plaintiff spoke with a commissary worker named Maria about mailing 385 pages.  (Oakland County Jail Inmate Grievance, Complaint, p. 18)  Maria went to speak with her supervisor before returning and telling plaintiff that he "must've pissed someone off because my supervisor told me not to bother with it for some reason."  (Oakland County Jail Inmate Grievance, Complaint, p. 18)  On August 9, 2007, McCoy pulled plaintiff out of plaintiff's cell and into an empty hallway.  (Oakland County Jail Inmate Grievance, Complaint, p. 19)  In the hallway, McCoy warned plaintiff about harassing the commissary office, which plaintiff denied doing.  (Oakland County Jail Inmate Grievance, Complaint, p. 19)  McCoy also told plaintiff that "[i]f I hear you speak out against anything concerning your case, I will personally make sure we put you in a place where you can't see or speak to no one."  (Oakland County Jail Inmate Grievance, Complaint, p. 19)  Also on August 9, 2007, plaintiff was called out by Ginnel.  (Oakland County Jail Inmate Grievance, Complaint, p. 19)  Ginnel promised to speak with McCoy about McCoy's threats, but he also

told plaintiff not to expect Ginnel or anyone else at the jail to "rat each other out." (Oakland County Jail Inmate Grievance, Complaint, pp. 19-20)[1]

### **B. Pending Motion to Dismiss and/or Summary Judgment**

On November 27, 2007, defendants filed a motion to dismiss and/or for summary judgment (D/E #19). In that motion, defendants argue that plaintiff's complaint of discrimination and/or retaliation by being moved to various locations within the jail are frivolous given that event screens and incident reports establish that Plaintiff was moved to various cells and even to different facilities, not because of discrimination or retaliation, but because he complained of problems or was the cause of problems that prompted such movement. Defendants also argue that, while plaintiff alleges that he was "unlawfully" removed from the work release program, an incident report clearly shows that he violated the rules and regulations of the program. Defendants further argue that plaintiff's transfers to an area which was only to be used by trustee workers and to another facility were actually positive moves for him.

Defendants' brief in support of their motion to dismiss and/or summary judgment notes that Holmes' denial of plaintiff's request to get married in the jail had nothing to do with retaliation or discrimination and that Holmes has denied every such request from inmates due to security reasons. Defendants also note that Ochadleus has no recollection of plaintiff and he flatly denies that the alleged incident of August 24, 2007 ever occurred. Defendants further note that Vasquez never threatened to raise plaintiff's security level, as there was no need to do so as

---

[1]Plaintiff also made claims under the heading 'Cruel and Unusual Punishment," but those claims are against the John Doe defendants, who are not part of this motion, and need not be discussed in this report and recommendation. (Complaint, pp. 8-9)

far as he was concerned, and that McCoy simply advised Plaintiff that, if he continued to harass the commissary workers, complaints would be made and officials may move plaintiff from his present location. Defendants also argue that, even assuming that the events occurred as alleged in plaintiff's complaint, there was no constitutional violation because the allegations contained in plaintiff's complaint are not federally protected rights.

Regarding plaintiff's claim that defendants denied him access to the courts, defendants argue both that there was no denial to court access and that, even if there was a denial, plaintiff did not suffer an injury. Defendants also argue that plaintiff's complaint may not proceed because plaintiff failed to allege or prove that he exhausted his administrative remedies against defendants. Defendants further argue that they are entitled to qualified immunity because plaintiff failed to identify the specific constitutional rights that the various defendants are alleged to have violated. Lastly, defendants argue that the Oakland County Jail and the Oakland County Grievance Committee are not entities capable of being sued and that, in fact, there is no entity at all known as the Oakland County Grievance Committee.

On January 30, 2008, plaintiff filed a response to defendants' motion to dismiss and/or for summary judgment (D/E #23). In that response, plaintiff argues that Holmes denied plaintiff an inmate marriage out of retaliation for plaintiff filing earlier grievances against prison officials in July 2007. Plaintiff also argues that the issues dealt with in his complaint, including the systematic denial of due process rights through policy modifications should be brought before the trier of fact given their great importance to the public.

**III. Standards of Review**

**A. Dismissal**

Defendants move to dismiss plaintiff's complaint pursuant to Fed. R. Civ. Pro. 12(b)(6). Under the traditional rule, when "considering a Fed.R.Civ.P. 12(b)(6) motion to dismiss, '[t]he district court must construe the complaint in a light most favorable to the plaintiff, accept all of the factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief.'" Amadasu v. The Christ Hosp., 514 F.3d 504, 506 (6th Cir. 2008), quoting Columbia Natural Res., Inc. v. Tatum, 58 F.3d 1101, 1109 (6th Cir. 1995).

However, the Supreme Court has recently clarified the law with respect to what a plaintiff must plead in order to survive a Rule 12(b)(6) motion. Bell Atl. Corp. v. Twombly, __ U.S. __, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). See also Association of Cleveland Fire Fighters v. City of Cleveland, Ohio, 502 F.3d 545, 548 (6th Cir. 2007). In Twombly, the Supreme Court stated that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S.Ct. at 1964-65 (citations and quotation marks omitted). Additionally, the Court emphasized that even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." Twombly, 127 S.Ct. at 1964-65 (internal citation and quotation marks omitted). In so holding, the Court disavowed the oft-quoted Rule 12(b)(6) standard of Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (recognizing "the accepted rule that a complaint should

not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"), characterizing that rule as one "best forgotten as an incomplete, negative gloss on an accepted pleading standard." Twombly, 127 S.Ct. at 1969.

**B. Summary Judgment**

Defendants also move for summary judgment pursuant to Federal Rule of Civil Procedure 56(b), which states that "[a] party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move without or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-movant. See Matsushita Electric Industrial Co., Ltd. et al. v. Zenith Radio Corp., et. al., 475 U.S. 547, 587, 106 S.Ct. 1348, 1356 (1986); see also B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 591-92 (6th Cir. 2001). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Once the moving party has carried his burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 587, 106 S.Ct. 1348. The opposing party cannot merely rest upon the allegations contained in his

pleadings. Rather, he must submit evidence demonstrating that material issues of fact exist. Banks v. Wolfe County Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003); Fed. R. Civ. P. 56(e). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S.Ct. 1348 (quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 1575, 1592 (1968)).

## IV. Discussion

### A. Exhaustion of Administrative Remedies

Defendants first argue that the entire complaint must be dismissed because plaintiff failed to prove he exhausted his administrative remedies prior to filing this lawsuit. Pursuant to the Prison Litigation Reform Act of 1995 (PLRA), 110 Stat. 1321-71, as amended 42 U.S.C. §§ 1997e *et seq.*, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Accordingly, exhaustion of available administrative remedies is mandatory in order for prisoners to bring a claim in federal court. Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 914 (2007); Woodford v. Ngo, 548 U.S. 81, 88, 126 S.Ct. 2378, 2383 (2006). Not only must the prisoner exhaust all available remedies but such exhaustion must be proper, including "compliance with an agency's deadlines and other critical procedural rules." Woodford, 126 S.Ct. at 2386 (holding that an inmate's exhaustion must be in compliance with applicable grievance procedures, specifically deadlines, because "no adjudicative system can function

effectively without imposing some orderly structure on the course of its proceedings"). However, § 1997e does not impose a jurisdictional bar to federal jurisdiction, <u>Curry v. Scott</u>, 249 F.3d 493, 501 -503 (6th Cir. 2001), and while the preferred practice is for inmates to complete the grievance process prior to the filing of an action, "because the exhaustion requirement is not jurisdictional, district courts have some discretion in determining compliance with the statute." <u>Wyatt v. Leonard</u>, 193 F.3d 876, 879 (6th Cir. 1999).

In this case, defendants argue that plaintiff's complaint must be dismissed because plaintiff failed to allege or prove that he exhausted his administrative remedies against defendants. In support of their position, defendants solely rely on <u>Brown v. Toombs</u>, 139 F.3d 1102, 1104 (6th Cir. 1998) and that case's holding that a prisoner must allege and show that he had exhausted all administrative remedies and he should attach the administrative decision disposing of his grievance to his § 1983 complaint. However, on January 22, 2007, the United States Supreme Court, in a unanimous decision written by Chief Justice Roberts, overruled <u>Brown</u>. <u>See</u> <u>Jones v. Bock</u>, __ U.S. __, __, 127 S.Ct. 910, 914, 166 L.Ed.2d 798 (2007). In <u>Jones</u>, the Court held that the PLRA does not require an inmate-plaintiff to plead or demonstrate exhaustion. Rather, the Court held that failure to exhaust is an affirmative defense that must be raised and proven by the defendant. ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints"). <u>Jones</u>, 127 S.Ct. at 921.

Given that the defendants' exhaustion argument is based on an analysis that has been soundly rejected by the Supreme Court, it must be rejected.

**B. Claims Against Oakland County Jail and Oakland County Grievance Committee**

As noted by named defendants Oakland County Jail and Oakland County Grievance Committee,[2] they are not legal entities against which a suit can be directed. See <u>Matthews v. Jones</u>, 35 F.3d 1046, 1049 (6th Cir. 1994); <u>Watson v. Gill</u>, 40 Fed.Appx. 88, 89 (6th Cir. 2002). Instead, because Oakland County Jail and Oakland County Grievance Committee are part of Oakland County, the county is the appropriate party to address plaintiff's suit and the claims against Oakland County Jail and Oakland County Grievance Committee should be dismissed. See <u>Matthews</u>, 35 F.3d at 1049; <u>Watson</u>, 40 Fed.Appx. at 89.

**C. Denial of Access to the Courts Claims Against Woodliff, Leman, Maria LNU and Praski**

The right of access to the courts is a fundamental right protected by the United States Constitution. <u>Swekel v. City of River Rouge</u>, 119 F.3d 1259, 1261 (6th Cir.1997); <u>Graham v. Nat'l Collegiate Athletic Ass'n</u>, 804 F.2d 953, 959 (6th Cir.1986). This right encompasses a person's right to physically access the court system and ensures the access will be "adequate, effective, and meaningful." <u>Bounds v. Smith</u>, 430 U.S. 817, 822, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). However, the right of access to the courts is not unrestricted and does not mean that an inmate must be afforded unlimited litigation resources. See <u>Lewis v. Casey</u>, 518 U.S. 343, 352-55, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). There is no generalized "right to litigate" which is protected by the First Amendment, <u>Thaddeus-X v. Blatter</u>, 175 F.3d 378, 391 (6th Cir.1999), and an inmate claiming that he was denied access to the courts must show that he

---

[2]It is unclear whether such an entity exists.

suffered an actual litigation-related injury or legal prejudice because of the actions of the

defendants.  Lewis, 518 U.S. at 349- 51; Boswell v. Mayer, 169 F.3d 384, 387 (6th Cir. 1999);

Pilgrim v. Littlefield, 92 F.3d 413, 416 (6th Cir.1996).  Thus, not every infringement or

inconvenience suffered by the litigating prisoner implicates this constitutional right.  As stated in

Lewis:

> The requirement that an inmate alleging a violation of Bounds
> must show actual injury derives ultimately from the doctrine of
> standing, a constitutional principle that prevents courts of law from
> undertaking tasks assigned to the political branches.  It is the role
> of courts to provide relief to claimants, in individual or class
> actions, who have suffered, or will imminently suffer, actual harm;
> it is not the role of courts, but that of the political branches, to
> shape the institutions of government in such fashion as to comply
> with the laws and the Constitution.  In the context of the present
> case:  It is for the courts to remedy past or imminent official
> interference with individual inmates' presentation of claims to the
> courts; it is for the political branches of the State and Federal
> Governments to manage prisons in such fashion that official
> interference with the presentation of claims will not occur.  Of
> course, the two roles briefly and partially coincide when a court, in
> granting relief against actual harm that has been suffered, or that
> will imminently be suffered, by a particular individual or class of
> individuals, orders the alteration of an institutional organization or
> procedure that causes the harm. But the distinction between the
> two roles would be obliterated if, to invoke intervention of the
> courts, no actual or imminent harm were needed, but merely the
> status of being subject to a governmental institution that was not
> organized or managed properly. If-to take another example from
> prison life-a healthy inmate who had suffered no deprivation of
> needed medical treatment were able to claim violation of his
> constitutional right to medical care, simply on the ground that the
> prison medical facilities were inadequate, the essential distinction
> between judge and executive would have disappeared: it would
> have become the function of the courts to assure adequate medical
> care in prisons.  [Lewis, 518 U.S. at 349-350.] [citations omitted]

Examples of actual prejudice include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline. Harbin-Bey, 420 F.3d at 578; Walker v. Mintzes, 771 F.2d 920, 932 (6th Cir. 1985).

In this case, plaintiff alleges that defendants deprived him of his right to access the courts by failing to provide a proper grievance procedure and by refusing to mail copies of plaintiff's complaint in another case. Viewing plaintiff's complaint liberally, his claims regarding denial of access to the courts encompasses his claims against defendants Woodliff, Leman, Maria LNU, and Praski.[3]

Plaintiff's denial of access to courts claims must be dismissed because he failed to allege that he was injured by any constitutional violation. As discussed above, an inmate claiming that he was denied access to the courts must show that he suffered an actual litigation-related injury or legal prejudice because of the actions of the defendants. Lewis, 518 U.S. at 349- 51; Boswell, 169 F.3d at 387; Pilgrim, 92 F.3d at 416. Here, plaintiff does not allege that an actual injury occurred. Instead, he makes generalized arguments that he was denied access to the courts because Praski informed plaintiff that the procedures plaintiff was following were outdated (Complaint, p. 11, ¶ C2b), Woodliff and Leman refused to photocopy a complaint (Oakland County Jail Inmate Grievance, Complaint, p. 17), and Maria LNU refused to mail a complaint (Oakland County Jail Inmate Grievance, Complaint, p. 18). Plaintiff, however, never points to

_____

[3]Plaintiff's denial of access to the courts claims also seems to include claims against Oakland County Jail and Oakland County Grievance Committee, but, as discussed above, plaintiff's claims against the Oakland County Jail and the Oakland County Grievance Committee must be dismissed because they are not proper entities to sue under § 1983. See Matthews, 35 F.3d at 1049; Watson, 40 Fed.Appx. at 89.

the manner in which such actions prejudiced him. He does not allege that his grievance was unprocessed, his complaint was not filed, or that he missed any court-imposed deadlines. Given the failure to allege an injury as a result of defendants' actions, plaintiff has failed to state a claim for denial of access to the courts against Praski, Woodliff, Leman or Maria LNU. See Lewis, 518 U.S. at 349- 51; Boswell, 169 F.3d at 387; Pilgrim, 92 F.3d at 416.

Plaintiff's allegations that Praski, Woodliff and Maria LNU denied him access to the courts are his sole claims against those defendants and they should be dismissed from this action. With respect to Leman, plaintiff appears to allege a retaliation claim in addition to his claim that Leman denied him access to the courts. For the reasons discussed below, that retaliation claim should not be dismissed and Leman should remain a defendant in this action.

### D. Retaliation Claims

In this case, plaintiff makes several allegations regarding retaliation and he appears to allege retaliation by Holmes, Vasquez, Leman, McCoy, Ginnel, and Ochadleus. The specific claims against each individual defendant will be discussed below.

To state a claim alleging retaliation for exercising a constitutional right, a plaintiff must show that (1) he engaged in protected conduct; (2) the defendant took an adverse action against him "that would deter a person of ordinary firmness from continuing to engage in that conduct"; and (3) that the adverse action was taken (at least in part) because of the protected conduct. Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir.1999) (en banc). "Although the elements of a First Amendment retaliation claim are constant, the underlying concepts that they signify will vary with the setting-whether activity is 'protected' or an action is 'adverse' will depend on

context." Bell v. Johnson, 308 F.3d 594, 602-603 (6th Cir.2002) (internal quotation marks omitted).

"Protected conduct" in the statutory setting is that conduct which the statute defines as protected. Thaddeus-X, 175 F.3d at 387. "Constitutional retaliation cases are similar in that certain provisions of the Constitution define individual rights with which the government generally cannot interfere-actions taken pursuant to those rights are 'protected' by the Constitution." Thaddeus-X, 175 F.3d at 387. "An inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf." Herron v. Harrison, 203 F.3d 410, 415 (6th Cir. 2000); see also Thomas v. Eby, 481 F.3d 434, 440 (6th Cir. 2007).

"An adverse action is one that would 'deter a person of ordinary firmness' from the exercise of the right at stake." Thaddeus-X v. Blatter, 175 F.3d 378, 396 (6th Cir. 1999), quoting Bart v. Telford, 677 F.2d 622, 625 (7th Cir.1982). See also Bloch v. Ribar, 156 F.3d 673, 678 (6th Cir.1998) (requiring plaintiff to prove, for a First Amendment retaliation claim, that "the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity"). Moreover, "in most cases, the question of whether an alleged retaliatory action poses a sufficient deterrent threat to be actionable will not be amenable to resolution as a matter of law." Bell v. Johnson, 308 F.3d 594, 603 (6th Cir. 2002). Unless the claimed retaliatory action is truly inconsequential, the plaintiff's claim should go to the jury. Bell, 308 F.3d at 603.

Also, as the Thaddeus-X court noted, "since there is no justification for harassing people for exercising their constitutional rights, [the deterrent effect] need not be great in order to be

actionable." 175 F.3d at 397 (quoting Bart v. Telford, 677 F.2d 622, 625 (7th Cir.1982)). A constitutional tort, however, requires that the plaintiff suffer an injury, and it would certainly "trivialize the First Amendment to hold that harassment for exercising [one's constitutional rights] was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise ...." Thaddeus-X, 175 F.3d at 397, quoting Bart, 677 F.2d at 625. Thus, the test is, if a reasonable trier of fact could conclude that a retaliatory act would deter a person from exercising his rights, then the act may not be dismissed at the summary judgment stage. Bell, 308 F.3d at 603.

Under the causation element of a prisoner's prima facie case for retaliation, the subjective motivation of the decision-maker is at issue and the plaintiff must show that the decision was motivated, at least in part, by the plaintiff's protected activity. Thaddeus-X, 175 F.3d at 399. Once the plaintiff has met this burden, if the defendant can show that the same action would have been taken in the absence of protected activity, the defendant is entitled to prevail on summary judgment. Smith v. Campbell, 250 F.3d 1032, 1038 (6th Cir. 2001). There is no causation where the defendant is not the decision-maker. See Smith, 250 F.3d at 1038 (holding that one of the defendants' comments did not demonstrate a causal connection between plaintiff's filing of grievances and the decision to transfer plaintiff because it was uncontroverted that the defendant making the comment was not the decision-maker in the case). Moreover, while retaliation can rarely be supported with direct evidence of intent, the plaintiff must have more than conclusory allegations of retaliatory motive unsupported by material facts. Harbin-Bey v. Rutter,  420 F.3d 571, 580 (6th Cir. 2005).

**1. Holmes**

As noted above, under the heading of "Retaliation", plaintiff alleges that, on June 29, 2007, Holmes denied plaintiff's request to get married by simply stating "security reasons." (Complaint, p. 5, ¶ 1).

**a. Motion to Dismiss**

Since plaintiff proceeds *pro se*, "his pleadings are held to a less stringent standard than those prepared by an attorney" and are liberally construed in his favor. See Fazzini v. Northeast Ohio Corr. Ctr., 473 F.3d 229, 231 (6th Cir.2006) (internal quotation marks omitted); Martin v. Overton, 391 F.3d 710, 712 (6th Cir.2004). Viewing plaintiff's complaint liberally, he has stated a claim for retaliation against Holmes.

While plaintiff never expressly identifies what protected conduct he feels he was retaliated against for, his complaint does mention a number of specific protected activities he engaged in prior to Holmes' denial of plaintiff's request to get married. For instance, in the background section of his complaint, plaintiff alleges that he submitted a grievance on May 8, 2007 regarding his treatment (Complaint, p. 4) and that, in an attempt to seek relief, he filed a complaint in Michigan state court (Complaint, p. 5). Given those background allegations, plaintiff has sufficiently pled that he was engaged in protected conduct.

Plaintiff also sufficiently alleged that Holmes committed an adverse act against plaintiff by claiming that Holmes denied plaintiff's request to get married. As discussed above, "in most cases, the question of whether an alleged retaliatory action poses a sufficient deterrent threat to be actionable will not be amenable to resolution as a matter of law" and, unless the claimed

retaliatory action is truly inconsequential, the plaintiff's claim should go to the jury.  Bell, 308

F.3d at 603.

Regarding the causation element, plaintiff's allegations are less clear.  In this case, while

plaintiff provides Holmes' stated reason for the denial, "security reasons," plaintiff never

expressly alleges that Holmes denied plaintiff's marriage request because of the protected

conduct.  However, plaintiff should still be seen as having sufficiently alleged causation given

the liberal construction affording the pleadings of *pro se* plaintiffs and, more significantly, the

fact that plaintiff's claim against Holmes came under the "Retaliation" heading of his complaint.

### b. Motion for Summary Judgment

Defendants' brief in support of their motion to dismiss and/or for summary judgment

provides: "It is true the Lt. Holmes denied Plaintiff's request to get married in the jail, but that

had nothing to do with retaliation or discrimination.  Lt. Holmes has denied every such request

from every inmate due to security reasons."  (Defendants' Brief, p. 6)  Defendants do not,

however, provide any affidavits or other evidence in support of those statements.  Therefore, to

the extent defendants argue that Holmes is entitled to summary judgment, they have failed to

meet their initial burden of demonstrating the absence of a genuine issue of material fact.

Matsushita, 475 U.S. at 587, 106 S.Ct. 1348.  Given that defendants failed to meet that initial

burden, the motion for summary judgment with respect to Holmes must be denied and plaintiff

need not come forward with specific facts showing that there is a genuine issue for trial.

Matsushita, 475 U.S. at 587, 106 S.Ct. 1348.

### 2. Vasquez

Under the heading of "Retaliation," plaintiff alleges that, on July 20, 2007, Vasquez pulled plaintiff out of his cell and threatened to raise plaintiff's security level.  (Complaint, p. 6, ¶ 2)  In addition to the threats, Vasquez allegedly stated "I know you are the problem and I will personally deal with you myself!"  (Complaint, p. 6, ¶ 2)

**a. Motion to Dismiss**

Viewing plaintiff's complaint liberally, as the court must pursuant to <u>Fazzini</u>, 473 F.3d at 231, plaintiff has stated a claim for retaliation against Vasquez.  As with the claim against Holmes discussed above, plaintiff made general claims of protected conduct that he engaged in prior to the alleged incident with Vasquez.  (Complaint, pp. 4-5)  Also like the claim against Holmes, the claim against Vasquez falls under the "Retaliation" heading of his complaint and should therefore be viewed as alleging that Vasquez took a adverse act against plaintiff because of plaintiff's protected conduct.  Additionally, the finding that plaintiff sufficiently alleged the causation element of a retaliation claim against Vasquez is strengthened by plaintiff's claim that Vasquez identified plaintiff as a "problem."

With respect to the adverse act element of a retaliation claim, mere threats alone are not always sufficient to sustain a retaliation claim, <u>Smith v. Yarrow</u>, 78 Fed.Appx. 529, 542-543, (6th Cir. 2003).  However, if the threat would deter a person of ordinary firmness from exercising his or her right to access the courts, it may be actionable.  <u>Thaddeus-X</u>, 175 F.4d at 398-399; <u>Smith</u>, 78 Fed.Appx. at 542-543.  In this case, Vasquez is alleged to have threatened to raised plaintiff's security level.   Defendants do not dispute that such a retaliatory action is

consequential and plaintiff has stated a claim upon which relief can be granted.  <u>Bell</u>, 308 F.3d at 603.

### b. Motion for Summary Judgment

Defendants' brief in support of their motion to dismiss and/or for summary judgment provides: "Plaintiff was angry about this answer but did not cause any trouble about it.  Deputy Dan Vasquez never threatened to raise Plaintiff's security level, as there was no need to do so as far as he was concerned. Further, Plaintiff's security level was never increased."  (Defendants' Brief, p. 7)  However, defendants do not provide any affidavits or other evidence in support of Vasquez's statements.  Therefore, to the extent defendants argue that Vasquez is entitled to summary judgment, they have failed to meet their initial burden of demonstrating the absence of a genuine issue of material fact.  <u>Matsushita</u>, 475 U.S. at 587, 106 S.Ct. 1348.  Given that defendants failed to meet that initial burden, the motion for summary judgment with respect to Vasquez must be denied and plaintiff need not come forward with specific facts showing that there is a genuine issue for trial.  <u>Matsushita</u>, 475 U.S. at 587, 106 S.Ct. 1348.

### 3. Leman

Plaintiff alleges under the heading of "Retaliation" that, while he submitted a grievance regarding the denial of his access to the courts to Leman on August 5, 2007, the grievance has mysteriously disappeared.  (Complaint, p. 6, ¶ 3)  Defendants make no argument with respect to this claim, but viewing plaintiff's liberally, plaintiff sufficiently alleges a retaliation claim against Leman.  As with the claims against Holmes and Vasquez discussed above, plaintiff made general claims of protected conduct that he engaged in prior to the alleged incident with Leman.

(Complaint, pp. 4-5)  As for the adverse act element, plaintiff appears to allege that Leman caused plaintiff's grievance to disappear.  Such a action is consequential and, therefore, plaintiff has sufficiently alleged the existence of an adverse act.  <u>Bell</u>, 308 F.3d at 603.  Furthermore, like the claim against Holmes and Vasquez, the claim against Leman falls under the "Retaliation" heading of his complaint and it should also be viewed as alleging that Leman took the adverse act against plaintiff because of plaintiff's protected conduct.

### 4. Ochadleus

Under the heading of "Retaliation," plaintiff alleges that, on August 24, 2007, a sick inmate in plaintiff's housing area kept pleading for medical attention by beating on the bars and Ochadleus told plaintiff "[i]f that fucker beats on the bars again, I'm pulling you out of there and I will wipe my feet on your sheets and spit on your bed!"  (Complaint, p. 7, ¶ 6)  When plaintiff asked Ochadleus why Ochadleus was punishing him, Ochadleus replied "I will fuck you up [plaintiff], I don't like you that's why!"  (Complaint, p. 7, ¶ 6)  Ochadleus also threatened to fabricate a ticket against plaintiff.  (Complaint, p. 7, ¶ 6)

#### a. Motion to Dismiss

Viewing plaintiff's complaint liberally, as the court must pursuant to <u>Fazzini</u>, 473 F.3d at 231, plaintiff has stated a claim for retaliation against Ochadleus.  As with the claim against the other defendants discussed above, plaintiff made general claims of protected conduct that he engaged in prior to the alleged incident with Ochadleus.  (Complaint, pp. 4-5)  Moreover, while mere threats alone are not always sufficient to sustain a retaliation claim, <u>Smith</u>, 78 Fed.Appx. 542-543, Ochadleus is alleged to have threatened to wipe his feet on plaintiff's sheets, spit on

plaintiff's bed, "fuck" plaintiff up, and fabricate a ticket against plaintiff. Defendants do not dispute that such threats are consequential and plaintiff has sufficiently alleged the adverse action element of his retaliation claim against Ochadleus.

With respect to the causation element of retaliation, the claim against Ochadleus falls under the "Retaliation" heading of his complaint. Given that heading and the liberal reading afforded *pro se* pleadings, while plaintiff's complaint alleges that Ochadleus stated he threatened plaintiff because he did not like plaintiff, the complaint should be viewed as alleging that Ochadleus took a adverse act against plaintiff because of plaintiff's protected conduct.

### b. Motion for Summary Judgment

Defendants' brief in support of their motion to dismiss and/or for summary judgment provides: "Deputy Ochadleus has no recollection of this Plaintiff and flatly denies that the alleged incident of August 24, 2007 ever occurred." (Defendants' Brief, p. 6) Defendants do not, however, provide any affidavits or other evidence in support of those statements. Therefore, to the extent defendants argue that Ochadleus is entitled to summary judgment, they have failed to meet their initial burden of demonstrating the absence of a genuine issue of material fact. Matsushita, 475 U.S. at 587, 106 S.Ct. 1348. Given that defendants failed to meet that initial burden, the motion for summary judgment with respect to Ochadleus must be denied and plaintiff need not come forward with specific facts showing that there is a genuine issue for trial. Matsushita, 475 U.S. at 587, 106 S.Ct. 1348.

### 5. McCoy

Plaintiff alleges that, on August 9, 2007, McCoy pulled plaintiff out of plaintiff's cell and into an empty hallway.  (Oakland County Jail Inmate Grievance, Complaint, p. 19)  In the hallway, McCoy warned plaintiff about harassing the commissary office, which plaintiff denied doing.  (Oakland County Jail Inmate Grievance, Complaint, p. 19)  McCoy also told plaintiff that "[i]f I hear you speak out against anything concerning your case, I will personally make sure we put you in a place where you can't see or speak to no one."  (Oakland County Jail Inmate Grievance, Complaint, p. 19)

### a. Motion to Dismiss

Viewing plaintiff's complaint liberally, as the court must pursuant to Fazzini, 473 F.3d at 231, plaintiff has stated a claim for retaliation against McCoy.  Plaintiff alleged that, after he attempted to get a legal document copied, McCoy pulled plaintiff out of plaintiff's cell and threatened him.  While mere threats alone are not always sufficient to sustain a retaliation claim, Smith, 78 Fed.Appx. 542-543, McCoy allegedly threatened to "personally make sure we put you in a place where you can't see or speak to no one"(Oakland County Jail Inmate Grievance, Complaint, p. 19) and such a threat could deter a person of ordinary firmness from exercising his right to access the courts.  Moreover, with respect to causation, plaintiff's complaint clearly alleges that McCoy made those threats in response to plaintiff's protected conduct.

**b. Motion for Summary Judgment**

Defendants' brief in support of their motion to dismiss and/or for summary judgment provides:

> Deputy McCoy took Plaintiff out of his cell, patted him down, and spoke to him in the hallway. He simply advised Plaintiff that if he continued to harass the commissary workers complaints would be made and classification may move him from his present location. Plaintiff responded by telling the deputy that the deputy couldn't threaten him and Plaintiff would add this deputy to his list of others that he was suing. In accordance with procedure, the deputy gave Plaintiff his name and spelled it for him. He did not threaten or otherwise speak to Plaintiff in the manner alleged on page 19 of Plaintiff's Complaint. [Defendants' Brief, p. 7]

Defendants do not, however, provide any affidavits or other evidence in support of those statements. Therefore, to the extent defendants argue that McCoy is entitled to summary judgment, they have failed to meet their initial burden of demonstrating the absence of a genuine issue of material fact. Matsushita, 475 U.S. at 587, 106 S.Ct. 1348. Given that defendants failed to meet that initial burden, the motion for summary judgment with respect to McCoy must be denied and plaintiff need not come forward with specific facts showing that there is a genuine issue for trial. Matsushita, 475 U.S. at 587, 106 S.Ct. 1348.

**6. Ginnel**

Plaintiff alleges that, on August 9, 2007, plaintiff was called out by Ginnel. (Oakland County Jail Inmate Grievance, Complaint, p. 19) Ginnel promised to speak with McCoy about McCoy's threats, but he also told plaintiff not to expect Ginnel or anyone else at the jail to "rat each other out." (Oakland County Jail Inmate Grievance, Complaint, pp. 19-20)

Even viewing plaintiff's complaint liberally, as the court must pursuant to <u>Fazzini</u>, 473 F.3d at 231, plaintiff has failed to state a claim for retaliation against Ginnel. Even assuming *arguendo* that plaintiff made sufficient allegations regarding protected conduct and an adverse act, he has failed to make any allegations regarding causation. As discussed above, plaintiff must allege that the adverse act was motivated, at least in part, by the plaintiff's protected activity. <u>Thaddeus-X</u>, 175 F.3d at 399. In this case, plaintiff makes no specific allegations regarding the reasons for Ginnel's refusal to report McCoy. Moreover, the implication from the complaint is that Ginnel refused to take action out of loyalty to McCoy and not because of plaintiff's attempts to access the courts.

**V. Conclusion**

For the reasons discussed above, the court recommends that defendants' motion to dismiss and/or for summary judgment be **GRANTED IN PART**. The claims against defendants Oakland County Jail and Oakland County Grievance Committee are improper because they are not entities that can be sued under § 1983 and, consequently, those two defendants should be dismissed from this action.

The claims alleging a denial of access to the courts against defendants Woodliff, Leman, Maria LNU and Praski should be dismissed because plaintiff failed to allege any injury. The denial of access to the courts claims against Woodliff, Maria LNU and Praksi are the sole claims against those defendants and, consequently those three defendants should be dismissed from this action. Leman, however, also has a retaliation claim made against him and that claim should be allowed to proceed.

The retaliation claims against defendants Holmes, Vasquez, J. McCoy and Ochadleus should also be allowed to proceed. The retaliation claim against defendant Ginnel, however, fails to allege the element of causation and should be dismissed.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

s/Virginia M. Morgan
Virginia M. Morgan
United States Magistrate Judge

Dated: June 3, 2008

**<u>PROOF OF SERVICE</u>**

The undersigned certifies that the foregoing document was served upon counsel of record and plaintiff via the Court's ECF System and/or U. S. Mail on June 3, 2008.

<u>s/Jane Johnson</u>
Case Manager to
Magistrate Judge Virginia M. Morgan